Case numbers 20-2092 and 20-2221, United States of America v. Trevon Gates and Deontay Gates, respectively. Joshua Blanchard for the appellant, first arguing, and Laura Halderup for the second appellant, arguing second. 10 minutes, I'm sorry, oral argument not to exceed 10 minutes for each defendant, 20 minutes for the plaintiff. Mr. Blanchard, you may proceed. Good afternoon. Josh Blanchard on behalf of Mr. Trevon Gates. I'm going to attempt to reserve four minutes. Where a court fails to recognize that there is an applicable sentencing guideline range before imposing sentence, the resulting sentence is procedurally unreasonable. Counsel, which of these defendants do you represent? Trevon Gates. Okay. I'm sorry, if I didn't say that, I meant to. My apologies. And may I ask a question? You asked to reserve four minutes, but we have two minutes. Two. Okay, thank you. Okay, two minutes. So every sentencing is supposed to start with an accurate calculation of the sentencing guideline range. That's because the Supreme Court has told us that the guidelines are a starting point for the district court to exercise its discretion. At sentencing, in this case, the district court announced a guideline range for count one. And it did mention a mandatory minimum for count four. But there was no discussion of the sentencing guideline range for count four, which I think is beyond dispute is 60 months. It then went on to impose an above guideline sentence of 72 months on count four. During the, after the sentence was imposed during the Bostic inquiry, when I objected to the sentence being above the guideline range, the court said, well, I didn't, I'm not sure that's a departure or a variance. I didn't impose, I didn't impose the mandatory minimum for the reasons that I stated. And then the court went on to say, the crime itself is without a guideline, correct? That, I think, makes clear that the court did not understand at the time it imposed the sentence that there was a guideline applicable to a 924C count. Now, the government argues that the recitation of the guideline range in this. But why isn't it, why isn't the case, so there is no guideline, really. It's the mandatory minimum, right? It's 60 months. So the guideline, the guideline is the statutory mandatory minimum, right? So if he's calculating the guideline, it's 60 months. There's no range, right? It's just 60 months. I mean, that's the quote unquote range. I don't know why, I mean, I would interpret that, he says the crime itself is without a guideline, correct? I mean, what, I guess there is no, I mean, there is a guideline, I suppose, but it just refers back to the statute. So why is he not just saying it's the statute? I mean, I don't know why, and then the next day, or whenever it is that the statement of reasons comes out, it's clear that the guideline range that he was using, 60. So I don't know why that doesn't, why is that a miscalculation? So two things. I think, first, there's a difference between a mandatory minimum and a guideline range. A mandatory minimum cabins the court's discretion, right? Yeah, I understand that. I'm just saying the guideline says it's the mandatory minimum, right? That's what 2K, 2.4, whatever one it is, says? Correct. So it's not a mandatory minimum in that case, it's the guideline range in that case, but it is what the statute says, too, right? It's 60 months. Right. In this instance, it happens to match the mandatory minimum, but we need to think about what a sentencing guideline is, right? And that's a policy judgment about what an appropriate sentence is. And where the court states there is no guideline for this crime, I think we have to take the court at its words. At that moment, the court did not recognize that there was a guideline range, and the court can't impose a procedurally reasonable sentence when it doesn't start with an understanding of what the policy judgment about an appropriate sentence is. And it didn't happen here because the court only recognized the mandatory minimum. I don't understand that argument. I'm sorry. Are you saying he just thought it was zero and then he picked 72? I mean, he knew it was 60, right? I mean, the indications are he knew that it was 60, that 72 was higher than 60. It had to be a variance. He gives a 3553A reason for why he's imposing the 12 extra months, so that means it has to be a variance. I'm confused as to what the problem was with that. Right. And so I was counseled below. What I took it to mean is the court did not believe there was any applicable guideline for the 60-month mandatory minimum, and that the court could impose anything without considering the guidelines between 60 and life. That's what I took it to mean when it was stated. And I think, you know, that makes some sense because I pointed out the guideline range was 60 months, and the court's response was, well, all right, if that's correct. If the court didn't make a finding then, okay, yes, the guideline range is 60 months, and let me explain, you know, why I'm varying from that policy judgment that 60 months is appropriate. I think in the moment the court didn't recognize that a guideline range of 60 months existed for this crime. I think the court thought it was just open, and that seems to make some sense when you think about the way the vast, vast majority of 924C cases are sentenced. Everybody gets 60 months. I mean, I'm sure that this judge has handled a lot more 924Cs than I have, but what I see is everybody gets 60 months. But he went on to acknowledge the 60 months, and then they had a plus 12. So it's not just that he thought it was just the 60 months. He recognized the mandatory minimum, but through the 35, 53 factors said that this conduct warranted something plus, and that's reflected in the sentence that he gave. So where is the error other than him making those words that there is no guideline? If he had just imposed the sentence he imposed without that phrase, there is no guideline, right, would we still be talking about error on the part of the trial judge? I think that if the, yeah, because the court never discussed the sentencing range, right? And I think this court has said that we need to start out with an accurate calculation of the sentencing guideline range, and that didn't happen. Now, it is true, as Judge Janbandian pointed out in the statement of reasons, he calculated the sentencing guideline range, but that came after the sentence was imposed. And I think the accurate calculation has to come before the sentence is imposed, because it's the starting point. To your point, Judge Donald, about, you know, the plus 12, I think that factors into my second issue of substantive reasonableness. The court did explain how it got to a 12-month increase over what would be the correct guideline range. It didn't explain why it got to that, other than to say that there was the prior gun offense. But there was no discussion of why 12 months was appropriate instead of 24 or 6. And I think it's particularly problematic where the concerns seem to be one of specific deterrence and not deterring Mr. Gates, because he had recently had a gun charge for which he received a six-month sentence. And it does not, there was no justification or explanation why we needed to go 12 times higher than the prior sentence in order to achieve specific deterrence, or why that conviction, which was accounted for in his criminal history category, wasn't already sufficiently accounted for. And so we've said that you have to give reasons for varying upward. It seems to me he gave reasons, and reasons that I think pass muster. He may not have given a specific reason on why he picked 12 months versus 10, but do we ask for that on review? My reading of the cases is we don't really get into the specific number. We really get into why are you varying upward. I understand that. And I think the issue here is because the sentence was one, the issue that he was relying on was already accounted for, which it can be, and still have an upward variance. But the variance, he's saying 180 days is what you got last time, and then he imposes a sentence six times longer. I think there needs to be more justification when there's that large of a gap. So I would ask that the court reverse the judgment as to count for and remand for resentencing. Counsel, do we have a variance here or a departure? Departure. The judge said he was varying upward, but I believe the law is that 16 months has to be considered a departure, which is what we have here. If he thought he was varying upward and he actually would have needed to impose a departure, does that make a difference in the sentencing procedure? And if so, what would that be? Well, so I think if it was going to be a departure, he would have needed to notice. When I asked the question, when I objected during the Bostic inquiry, I think my objection was I'm not clear on whether this is a departure or a variance because there just wasn't any real discussion about it in the way I would expect in a variance situation because I don't think the court took into account that there was a guideline. He very clearly took into account that there was a statutory sentencing range from 60 months to life. I don't think the court realized there was a guideline that was applicable here. Well, as a matter of law, does it make a difference whether we have here a variance or a departure? I think if it was a departure, he would have had to have provided notice that he intended to depart upward, which didn't happen. All right. Thank you. Good afternoon. Good afternoon. May it please the court. My name is Laura Helderop, appearing on behalf of the appellant Deontay Gates, and I'll be referring to my client as Deontay so as to avoid any confusion between him and his brother Trevon. And with permission from this court, I would like to request two minutes for rebuttal. All right. Why are these two cases together? They were not consolidated or anything like that. Did anybody in the counsel ask that they be proceeded with separately? We did not. I believe no counsel asked that they be dealt with separately, Your Honor. Quite frankly, I don't know why they were called together. The issues that we're here today for are different. But we did not ask that they be consolidated, and neither of us asked for them to be separated. All right. So Deontay's case is more a case about how juvenile and young offenders are sentenced in federal courts. Deontay was 18 for just 33 days before the government arrested and charged him, and ultimately he was sentenced to over 14 years incarceration for conduct largely premised on juvenile conduct. As we outlined in our brief to this court, the way that the guidelines were applied in this case are inconsistent with the more than 15 years of juvenile justice reforms that we've seen state courts, and more importantly for this court, the Supreme Court, have recognized repeatedly as early as 2005 all the way up to 2021, that jurisprudence didn't exist at the time United States v. Huff was decided by the circuit. And although the Supreme Court's jurisprudence in those cases were quite narrow, they certainly opened the conversation and included a lot of observations about youth and how they should be treated in the juvenile justice system. Do we have to overrule Gibbs and Huff in order for you to win? No, I don't believe you do, Your Honor. And we are aware that this court today does not have authority unless there is some intervening Supreme Court precedent to overturn a case from this circuit, and we are aware of that. And so to answer your question, no, because procedurally we believe the district court, aside from the policy argument that we included in our brief, we believe the district court did err procedurally by misinterpreting Huff. And in doing so, essentially ended up treating the guidelines as mandatory versus advisory. And Huff allows courts, district courts, to consider juvenile conduct in a case like Deontay's, where there's this conspiracy and it's an age of majority spanning conspiracy. But here the district court made no considerations at all. There were no findings at all on the record regarding what conduct was juvenile versus what conduct was adult. And so that's where our procedural error, procedural unreasonableness argument stems from. When you say conspiracy, was there a conspiracy charge? I thought there was not a conspiracy here. Our client was initially charged, Your Honor, with one count of conspiracy to distribute methamphetamine, one count of possession with intent to distribute 50 grams or more of meth, and then one count of possession of a firearm and furtherance of drug trafficking. He was not convicted of the conspiracy count, though. He entered a guilty plea to the possession with intent to distribute count, and in doing so he never admitted to his participation in a conspiracy. And there was no finding on the record that he was ever involved in a conspiracy. And so- Do those things prevent the government then from considering that a conduct, given that the court at citizen can consider it even acquitted conduct? And I understand there was not, there was a dismissal here, but would the government have been precluded from considering that activity, that conduct? Well, in terms of the consideration of acquitted conduct, for example, that at least still usually goes through some sort of distinguishing fact-finding process, which we didn't have here. And so to your answer, to your question, juvenile conduct could be considered. However, there was no fact-finding here of what conduct occurred when Deontay was under the age of 18 and what occurred after he was over the age of 18, other than the two counts that he pled guilty to. But he was found responsible for the entire quantity of methamphetamine. But I'm confused, though. Why would the judge have to make that finding if under Huff and Gibbs it's relevant conduct, the juvenile conduct? So why does he, why does the judge have to say there's 1.4 kilograms or whatever, 0.8, you know, juvenile, 0.6, or whatever, my math is bad probably. But why would that finding have to be made if you could add it all together? The way, what we are arguing is that the way that the district court applied Huff here essentially had him treat the guidelines as mandatory. And so what he did was he did acknowledge their advisory nature, and he did mention that he did cite to Huff in doing so. But the Huff court allows them, allows courts to consider juvenile conduct, but the court here didn't make any considerations. There were no considerations at all of what was juvenile conduct or what wasn't adult conduct. And we are proffering to this court that those conducts should be distinct under the Federal Juvenile Delinquency Act, which we mentioned in our brief, because the whole policy behind the Federal Juvenile Delinquency Act. But you're saying that you should find what attribute what should be, what was done as a juvenile, and be in some sense more reluctant to count that because of the juvenile policy, even though you can count it under Huff and Gibbs, you should at least be a little bit reluctant to do it. Is that fair? Yes, I think that's fair, Your Honor. Is there any case law that supports that? I'm curious. Like even from another circuit? So the only other case from a, there are no other cases in the Sixth Circuit that address this issue in particular. The only other circuit that I came across that has addressed this issue was the Seventh Circuit in a 1998 case called United States v. Jarrett. And that case was not as factually similar, but touched on this issue generally. And in that case, the court had held that the guidelines command a judge to look past the charges of conviction when determining the actual sentence. But that case in 1998 was, again, a pre-Booker case, which came out in 2005 and established the advisory nature. So the language in United States v. Jarrett is called into question when the court says that the guidelines command this type of fact-finding to occur. And in Deontay's case, had law enforcement searched his home just 34 days prior to March 26, 2019, we would not be here today. They wouldn't have had jurisdiction to charge him because he would have been 17 at that time. He was 18 for 33 days and then was sentenced to over 14 years incarceration for a conduct that mostly occurred when he was under the age of 18. I see my time is up, so I'm happy to answer any other questions otherwise. Thank you very much. Thank you. May it please the Court, Joel Fossen on behalf of the United States. I'm going to begin, if it may be acceptable to your honors, to begin with the Deontay Gates appeal. Contrary to my adversary's assertions, this court really would have to overturn Gibbs and Huff in order to remand this case back to the district court. There's a bit of a misnomer I would submit here through my adversary's arguments, your honor. It is true that under the Federal Juvenile Delinquency Act, the government cannot just charge willy-nilly juveniles as they would adults. There has to be certain procedural hurdles that are met. One of those procedural hurdles that need to be met are that it's a Controlled Substances Act case. The juvenile was at least 15 when they committed the conduct. And then there has to be a certification by the Attorney General that it's in the interest of the United States government to charge that individual. So I want to make that point at the start as a backdrop to say that considering conduct of juveniles is not verboten in the federal system at all. And it's not under the Federal Juvenile Delinquency Act either. Here, Deontay Gates had some conduct that he committed when he was 17. He was charged for an offense that he committed, possession with intent to distribute 50-plus grams of methamphetamine, after he was 18. The Manchin case, he was also charged with conspiracy with his brother Trayvon. What about this argument that the court should be reluctant at least to consider it relevant conduct or relevant drug amount or something when you're a juvenile? Is there any support for that? Or why doesn't the idea that you have to go through some hoops to charge somebody who's a juvenile, why doesn't that support the idea that just kind of as a policy matter, we are reluctant to include juvenile conduct? There is no case law at this point that requires it, Your Honor. The Federal Juvenile Delinquency Act doesn't even apply here because Deontay Gates was convicted of a crime that he committed after he was 18. There is no prohibition on what courts may consider as 3553A factors. 18 U.S.C. 3661 effectively provides there's no limitation on what the courts can consider for purposes of sentencing. I understand you say that there is no case that prohibits consideration of that conduct. And I would ask, under the circumstances, why shouldn't the court give serious consideration to limiting or outright overruling gifts and how under the circumstances? I mean, I understand a panel can't do certain things, but I'm talking about the court generally. Because here we are, as counsel for Mr. Deontay Gates said, there was a certain number of days that really kind of makes a difference here. And all of a sudden, you can go back and get the universe of this person's juvenile-related conduct and use that to get to where the government got to in this case. So why shouldn't there be some limitation? Well, respectively, Your Honor, it's a great question, and I'm going to try to address it right now. If we were to do that, we would also be foreclosing, considering juvenile adjudications at sentencing. There is a difference between criminal liability for conviction purposes and sentencing accountability. And the federal government and Congress, through the Federal Juvenile Delinquency Act, has made that distinction. Up to this point, the courts, with the exception of outer boundary cases under the Eighth Amendment Clause, which were cited in Deontay Gates' brief, for example, a prohibition on the death penalty for juveniles under 18 for conduct. That is now verboten. The Supreme Court's decided that. You can't have mandatory life without parole for a non-homicide crime. The Supreme Court has also decided that. All of these cases are at the outer boundaries of how a juvenile may be punished. But none of that Supreme Court jurisprudence is requiring this court or any other court to essentially put a wall and not look at juvenile conduct for sentencing purposes. And what you're saying is true. But given all of the social science and the neuroscience now that is coming into fore regarding the juvenile brain, does that argue for some consideration of looking at this kind of information and, as I say, limiting things like gives and how? Your Honor, I certainly think that a court can and should consider the age and circumstances and background of a defendant as it would an adult defendant under 3553A factors. And those things aren't off the table for sentencing consideration. Our court did that here. It recognized that Deontay Gates had a marijuana problem, that he smoked marijuana when he started at 13 years of age, that he didn't have any good influences, that he grew up in a very broken home and did not have a lot of positive influences. The court considered that when it was fashioning a sentence for him and sentenced him to the very bottom of the guidelines. But what it decided in the particular circumstance of Deontay Gates was that he had already been in the criminal justice system in Michigan and had been given a pass with the Homes Youthful Trainee Act and had been given some leniency with that act less than one year prior for both a gun and a drug offense. And five months later to 12 months later, he was back committing federal felonies while he was on probation for those actions. So the district court did consider his background and upbringing. And I would submit that's something a district court absolutely should consider at sentencing when there's juvenile conduct that straddles adult liability criminally. But for purposes of this case, Your Honor, there is no case out there that would direct this court to remand back to the district court to reconsider the sentence. Okay, you said there's no case out there that would direct the court to do so. Is there a case out there that would permit the court to do so? One is mandatory, one is discretionary. Not that I'm aware of, Your Honor, because I've read the transcript. Judge Maloney, the district court judge, did treat the guidelines as advisory. He did look at the background of the defendant, the circumstances of the offense, sentenced him to the bottom of the guidelines on the drug count. I'd also note for the record that the 50-gram threshold for the mandatory minimum in this case was met based on the search warrant of Deontay Gates' apartment and his brother's apartment after Deontay Gates turned 18. So there's no issue as to whether it was only juvenile conduct that was triggering the mandatory minimum offense. And I realize this is the guidelines, but I wanted the court to be aware of that as well. And with all due respect to my colleague, this policy argument that the defendant is making is asking this court to effectively impose a rule on juvenile-to-adult straddling cases that would require unnaturally, I would submit, based on how sentencing law works in this circuit and throughout the nation, to turn a blind eye to any juvenile conduct, even if it's committed as relevant conduct as it was here in the same course and the same spree of events. All of the conduct that's at issue in this case largely occurred within a span of a year or less straddling the defendant's 17th and 18th birthdays. The defense concedes that that conduct would be admissible at purposes for trial. And so to me, it's completely illogical why the court, for sentencing purposes where the federal rules of evidence don't even apply, wouldn't be able to consider conduct that's admissible at trial, that Title 18 U.S.C. 3661 directs the courts to consider and say isn't off the table. It would be creating an unnatural rule. And I would submit that if the law is to move in the direction of, I guess, greater leniency towards individuals whose relevant conduct might straddle the age of majority, that the appropriate venue for that is legislative changes in Congress and not a court-imposed rule, at least not based on the Sixth Circuit precedent that is here, Your Honors. Now, if I may turn to Trayvon Gates. This is both a procedurally reasonable and a substantively reasonable sentence. I believe it was Judge Nel Bandian that noted, well, didn't the district court get the guideline right here? Yes, the district court did. Substantively, throughout the entire transcript, the district court was correct. He was not treating the 924C guideline as anything other than 60 months. Realized, and this is in the, there was a question about whether it was a variance. At page ID 919 of the sentencing transcript, he noted that he was varying upward. What do we do with the note to 2K2.4 that says that if a sentence is above the minimum term required by 924C, it's an upward departure from the guideline sentence? Does that preclude a variance? It's odd that the note would say, and maybe it's a vestige of the time before variances, pre-Booker, I don't know, but it does say upward departure. Correct, and unfortunately, at least what I've observed in my practice, Your Honor, the terms variance and departure frequently are interchanged, and I would submit that may be a vestige of pre-Booker law. You agree that a variance and a departure are legally different. I mean, a departure, you need a 5K letter, whatever it would be. I mean, you need certain specific things. A variance is 3553A based, right? That is correct, and a departure is within the rubric of specific guidelines. So, for example, substantial assistance downward departures are under 5K1.1. And in this case, it was a variance. Obviously, he did not depart upward. And your friend on the other side noted there would have to be notice, all kinds of things for departure. Correct. He noted he was varying upward at page ID 919. So is it possible that it was error to vary upward where this note in this guideline says upward departure? Not with the guidelines being advisory, Your Honor. I would submit that it's not. Otherwise, you would have the advisory guidelines trumping what Congress has said is a mandatory minimum of five years up to lifetime sentence. And if that were a legal error, then we would, this panel would effectively be overruling Booker and treating the guidelines as mandatory in this specific context of this case. In terms of substantive reasonableness. Well, what do we do with this statement that, so the court does say the crime itself is without a guideline, correct? What is that? That's not true, is it? That is not true, Your Honor. And I was not the AUSA that handled the sentencing. I would surmise that that was Judge Maloney's way of saying, perhaps inartfully, that there isn't a numerical range on the guideline for 924C. In other words, it's not 60 months to 72 months or 60 months to 96 months. Elsewhere in the sentencing transcript, Your Honor, and this is at page ID 917, he, and I'm quoting, the trial court quoted explicitly, for purposes of the sentence on count four, the court consulted the guidelines. He noted that the guideline range was 60 months there, and he's saying he's going up 12 months to 72 months. So there is some inartful language in the sentencing transcript. I'm not going to deny that. But substantively, Judge Maloney in the trial court got this right. He always treated the guideline range as 60 months. He talked about varying upward 12 months to 72 months. He noted that in his statement of reasons, which properly accounted for the guideline. And so my adversary's argument, in my view, is really form over substance here. And if there was any error, it was really harmless, because the district court's handling of the sentencing made it clear that he was going to impose a, the sentence, the court was going to impose the sentence that they did in any event. He acknowledged my colleague's objection. Don't you think it's odd, though, the way that he picked the 72 months? There's this calculation where he says you would go up two levels, and then he picked something. It seems confusing. Am I misreading the transcript? Like, what was going on? No, you're not misreading the transcript. And I wish I had insight directly into the trial court's mind at that very moment. Because I will acknowledge the guideline at 2K2.4B notes that the guideline range is 60 months, not 60 to 96, as I mentioned earlier, or any other range. And I think that's where the court's inartful use of words for purposes of creating a clear transcript here fall a little bit short. But substantively, in my view, they don't fall short. Because, again, even if there was some error here, and the government is not conceding any error here, because it would simply be remanding to use magic language, if you will, in transcripts, rather than actually looking at the substance. But does he have to give some reasons as to why he picked 72 and not 71 or 70? In other words, I think that he gave enough reasons on why he was varying upward. The guideline doesn't account for the recency of the other crime and whatever it is. So let's say that's fine. But when you're picking the actual number, do you have to give us – You do not, Your Honor. What if he had said, hey, look, I went back to my office, I couldn't figure it out, I threw a dart at a dartboard, it landed on 72. Is that okay? No, that's not okay. That would be arbitrary. You have to tether – And then I went and I did basically split the difference and came up with 72. Well, whatever guideline they land on, Your Honor, they have to tether that to the reasons for why they're landing there. And the court in this case did that based on the history and characteristics of this defendant, particularly the recent criminal history that involved a possession with methamphetamine offense and a carrying concealed weapon offense within a year of the conduct that gave rise to Trayvon Gates' federal criminal conviction, both of which also were sentenced. I believe he received 180 days of probation under the Holmes Youthful Trainee Act in Michigan, received leniency at that time in the court, decided that he was such a recidivist. I get that. And I understand that. And I'm with you. I think there's plenty of reasons why you would vary upward in this case. I'm just not sure I get why it would be this number. And maybe we haven't asked for judges to articulate that. And I don't know of cases that say that specifically. But you and I both have this instinct that if you did it arbitrarily, that would be problematic. So that suggests to me that there is some review, perhaps, of the number. And if we look at a transcript and we see a rationale that seems very odd, I moved up two levels, I looked where the ranges would be, that's what I picked. It just seems odd. Well, and we did address that. I think we did address your question in the briefing, Your Honor. The court has required that the upward variance be proportionate to the crime. There is no mathematical certitude that the law requires. In other words, if the guideline is 60 months, then you're going to be capped at half of 60 months. So you can only go 30 months. Otherwise, it's black-letter law that it's disproportionate to the offense. So we cited cases in our briefing, Your Honor. United States v. Johnson, United States v. Ciccini, and United States v. Sims, all of which gave upward variances on 924C convictions, which were, in fact, higher than the 12 months given here, all of which were deemed substantively reasonable by panels of this court. And we also cited cases on the flip side where there was reversal and remanding for substantive unreasonableness. So, for example, United States v. Stanton, there was a remanding for resentencing where the court varied upward 191 percent from guidelines range for a firearm offense. And another one, United States v. Warren, where there was remand for the court varying upward 90 percent. So I think when you get to a situation where you are effectively doubling the guideline range, perhaps without necessary justification, that is where this court has enacted its authority to remand finding substantive unreasonableness. But for something that's within a 20 percent range, 15 percent, things of that nature, and this case was 20 percent, the court has not found it to be substantively unreasonable to do that, so long as it's not chosen arbitrarily and the sentencing record reflects that. And it wasn't in this case. He specifically identified the circumstances as to why he was varying upward for this defendant, which was effectively based on a lot of the criminal history, particularly the recency of a very similar criminal history for this defendant where he did not learn a lesson. So, thank you, Your Honors. Thank you. Any more rebuttal? Responding to Judge Clay's question at the end there, the thing I was trying to summon was Rule 32H that requires notice on a departure. And I think also, to the extent that it was a departure rather than a variance, it would need to be based on factors that weren't accounted for. And I think the things that the court explained were accounted for within the guidelines. I think it's important here, to the extent that there's a question about what was in the district court's mind at the time it imposed sentence, I think that's reason enough to remand for resentencing. Because I think we're stuck with the record, and I think the record is clear when the court says there is no guideline range, right? I'll push back. My friend on the other side says that at page 917, the court says there's a guideline range. I don't think that's what happened. I think what happened is the court was explaining how it determined to get to 72 months, which I think underscores the point that the court didn't understand there was a guideline applicable here. Because if the court understood that the guideline was 60 months, the court wouldn't have been on the sentencing table and wouldn't have been moving two levels down and then just picking a number kind of in the middle. And so for those reasons, I think the law is clear that when the court doesn't start out sentencing by properly calculating the sentencing guideline range and then impose an appropriate sentence from there, the sentence is procedurally unreasonable. And so I'd ask the court reverse and remand as they count for. Thank you. Thank you. Thank you. Thank you. I just have a very brief response in regards to counsel's observations about the narrow holdings in the Supreme Court jurisprudence regarding why juveniles should be treated differently than adults for sentencing purposes. And it's true that those holdings are narrow and that they do apply to issues that have come up more in the state courts. But this is an issue that rarely comes before the federal courts because federal courts seldom sentence juveniles compared to the state courts. And so it is very possible that that jurisprudence would have already been expanded to the federal courts or could be in the future if federal courts begin sentencing juveniles more and more frequently. And just on that point alone, I want to conclude and just ask that this court consider that jurisprudence and vacate and remand Deontay's sentence. Thank you. Thank you. And the court is aware that both defense counsel were appointed pursuant to the Criminal Justice Act. And we're aware that you provide your services in behalf of our system of justice as well as your clients. So we certainly thank you for well representing your clients here today. Thank you very much. The case is submitted and the clerk may call the next case when ready.